BURTIS v. DAVISON.

1. LANDLORD AND TENANT—DUTY TO MAKE REPAIRS—PERSONAL INJURIES—EVIDENCE—QUESTION FOR JURY.

In an action by a sublessee on the second floor of a three-story flat building against the landlord to· recover damages for personal injuries received as the result of a porch railing giving way while she was leaning over it,. evidence *held*, to present a question for the jury whether defendant made such inspection from time to time, as an ordinarily prudent man would have made ·under like circumstances, where it appeared that second and third stories were occupied by numerous tenants for living purposes; that the building has a common stairway, and a porch on each floor level in the rear used by the tenants as a rear entrance, for hanging out clothes, and for pleasure purposes during warm weather, the railings of which were toe-nailed in the upright timbers, and that such stairway and porches had been in use for about 15 years.

2. SAME—INSTRUCTIONS.

An instruction that it was the duty of defendant to make such an inspection "as would naturally disclose the defect, if it existed," was erroneous.

Error to Genesee; Stevens, J. Submitted October 9, 1917. (Docket No. 62.) Decided December 27, 1917.

Case by Anna Burtis against Mathew Davison for

personal injuries.   Judgment for plaintiff.   Defendant brings error.   Reversed.

*George W. Cook,* for appellant.

*Lee & Parker,* for appellee.

Defendant is the owner of the Davison Block, situate in the city of Flint.   This block is a three-story brick building facing South Saginaw street.   The ground floor is divided into three stores.   The second and third floors are used for flats or living rooms. There is one common stairway used by all tenants occupying the second and third floors of the building leading from South Saginaw street to the second floor. At the east or rear end of the building is a porch extending the entire width of the building also used in common by all the tenants, occupying the second and third floors.   A porch landing is constructed level with the second floor, with a porch roof above for the use of the tenants above.   The porch roof and the second floor landing are supported by posts 6 inches square, set about 6 feet 8 inches apart. Between these posts and about 2½ feet above the second floor landing are 2x4 pine scantling, toenailed into the posts at either end and used as a porch railing.   The second floor landing of this porch is 16 feet above the ground and was used in common by all the tenants of both the second and third floors as a rear entrance to their living rooms,' also for hanging out clothes, etc., and to sit upon summer evenings.   The building had been constructed more than 15 years, but there is evidence that the porch was repaired some 10 or 15 years prior to the injury to plaintiff.   At that time there were some 8 or 10 different tenants occupying rooms on the second floor.   Plaintiff with her husband and son were subtenants occupying the southerly rear suite on the second floor.   She had lived there from the spring of 1915.   The accident occurred November 16, 1915.   It

is her claim that she went out on the back porch to look for her husband; that she put her hands on the railing between two of the posts, leaning lightly over the railing to look for her husband; that the railing gave way and she fell to the ground below, her fall being partially arrested by two electric light wires about a foot below the porch floor. She brought suit against the defendant, claiming damages for injuries sustained by the fall. Upon the trial, the jury under the direction of the court inspected the premises and examined the place at which the railing fell, and the railing which had fallen was an exhibit in the case. Plaintiff obtained a verdict in the sum of $2,711.63, upon which judgment was thereafter entered.

At the close of the testimony defendant's counsel moved for a directed verdict upon the grounds:

(1) That there was no evidence in the case showing negligence or breach of duty upon the part of the defendant.

(2) That the defect complained of, as a matter of law, was a hidden defect, and there was no evidence that defendant had any knowledge of such defect or that he could have obtained such knowledge by the use of reasonable and ordinary care.

The court reserved decision upon this motion under Act No. 217, Pub. Acts 1915 (3 Comp. Laws 1915, § 14568 *et seq.*), and submitted the case to the jury. Thereafter counsel for defendant moved the court to decide said motion, and also asked for a new trial if the motion for a directed verdict should be denied. Both motions were denied and the case is now in this court for review.

BROOKE, J. (*after stating the facts*). Defendant offered the testimony of himself and his agent, Mr. Myers, tending to prove that frequent inspections were made of the premises, including the railing which fell. Based, we presume, largely upon this testimony, defendant claims that he was entitled to a directed ver-

dict upon the ground that no negligence or breach of duty had been shown.

With this contention we are unable to agree. It is our opinion that considering the character of the construction, the use to which porch railings are ordinarily put, and the knowledge possessed on the part of the defendant that plaintiff and his other tenants would be likely to use such railing in the ordinary and usual manner, the question whether defendant had caused such inspection to be made from time to time, as an ordinarily prudent man would have made in like circumstances, was one for the jury. · A motion to direct a verdict was therefore properly denied.

Defendant submitted many requests to charge. All of these requests pertinent to the issue were given by the trial judge, among them the following:

"*Sixth.* In cases where the landlord is liable for repairs it is his duty from time to time to make reasonably safe and prudent inspection of the premises and to ascertain whether or not any of such common stairways, halls, or porches are in proper condition of repair, and if he makes or causes to be made such reasonable inspection from time to time as an ordinarily prudent and careful man would do under like circumstances and conditions and repairs the parts found to need the repairs, and makes such repairs in a reasonably careful and prudent manner, then he has fully conformed to all requirements of law.. Now, that will be taken in connection with what I shall say hereafter.

"*Seventh.* The landlord is liable for injuries caused by defects in passageways, stairways, and other places used in common by the tenants, only if guilty of negligence or want of reasonable care, and when he has no actual notice of the defect, and the defect is of such recent origin or is of such character that he could not be expected in the exercise of such ordinary care and diligence to be aware thereof, he is not liable for resulting injuries if he makes the necessary repairs upon the same within a reasonable time after such notice.

199—Mich.—2.

"*Eighth.* Applying these principles, therefore, to the case at bar, I charge you that if you find there was neither visible nor hidden defects in the railing at the place the plaintiff claims to have fallen—I have added this—'and if you further find that the defendant had made proper investigation and inspection,' then there is no case against the defendant, and your verdict must be for the defendant.

"*Ninth.* If you should find that there was a hidden defect in this railing, and that such defect was not observable by the use of ordinary care and caution in inspection of the premises, and that defendant had no knowledge of such hidden defect and could not have discovered such hidden defect by reasonable care and inspection, and if. there was nothing in the character, conditions, or circumstances that would lead the mind of an ordinarily reasonable and prudent man to believe that there might be a defect in the railing, then there is no case made against the defendant, and your verdict would be no cause of action.

"*Tenth.* If you find that this place and this railing was in a reasonably safe condition at the time of the accident, then of course the defendant would not be guilty of negligence, and your verdict should be no cause of action.   *   *   *

"*Thirteenth.* If you find in this matter that the defendant made or caused to be made reasonable and proper inspection of the common stairways, halls, and porches, and especially of this railing, and was unable to discover any defect therein, and had no knowledge of any defect, and could not have discovered such defect by due and reasonable inspection and investigation, then he was not guilty of want of lawful care, and your verdict must be no cause of action.

"*Fourteenth.* I further charge you that the degree of care required by the defendant was only such care as a reasonably careful and prudent man would exercise under the same circumstances and under like conditions, and if the defendant did all that an ordinarily careful and prudent man would have done under like circumstances and conditions, then he is free from negligence and plaintiff cannot recover."

These instructions were qualified by the following:

"Gentlemen, you will notice the word 'inspection'

used; 'investigation and inspection.' It seems to be conceded by both parties it was the duty of Mr. Davison, the defendant in this case, to investigate and make inspections to determine whether this was a safe place or otherwise. Now, he testifies, and his agent, Mr. Myers, testifies, that they were up there occasionally, or frequently, as the case may be, and when they were up there they put their hand on this railing to see if it was loose, etc.; they told what they did. Now, an inspection means this; an inspection means such an inspection as would naturally disclose the defect if any existed. Do you understand that? It is such an inspection that would naturally disclose the defect if it existed."

Again later in the charge the court said:

"Now, gentlemen, I do not think there is any necessity of saying anything any further. I told you what a proper inspection is according to my view, and I told you what degree of care should be exercised by Mr. Davison, and that care is such as a reasonably prudent man would exercise under the same circumstances."

The only other assignment of error argued by the defendant is the one based upon the qualifying language used by the learned trial judge. It is asserted that such language practically imposed upon the defendant that degree of care which an insurer would owe. On the other hand, it is urged by plaintiff, that the language used by the court after the objectionable instruction was given cured any error based upon said instruction. We have no doubt that the court was in error in instructing the jury that it was the duty of the defendant to make "such an inspection as would naturally disclose the defect if any existed," and we are unable to say that this erroneous view of the law is not reflected in the verdict.

The judgment must be reversed, with costs, and a new trial granted.

KUHN, C. J., and STONE, OSTRANDER, MOORE, STEERE, and FELLOWS, JJ., concurred with BROOKE, J. BIRD, J., concurred in the result.